William E. LANHAM

v.

SOUTHERN BAKERIES COMPANY, Inc.

Civ. A. No. 6449.

United States District Court
N. D. Georgia,
Atlanta Division.

July 5, 1960.

---

6. File Wrapper, p. 29.

7. S.M., April 21, 1961, pp. 250, 251.

Smith, Kilpatrick, Cody, Rogers & Mc-Clathcey, Atlanta, Ga., Curtis, Morris & Safford, Robert D. Spille, New York City, for plaintiff.

Crenshaw, Hansell, Ware & Brandon, Atlanta, Ga., Earl & Webb, Kalamazoo, Mich., for defendant.

HOOPER, Chief Judge.

### Statement of the Case

Plaintiff, a citizen of Atlanta, Georgia, filed this action against Southern Bakeries Company, Inc., a Delaware corporation with places of business in Atlanta (formerly known as Columbia Baking Company, Inc.). Plaintiff claimed infringement of his patent No. 2,758,391, issued August 14, 1956 covering a device by which bread was conveyed from the oven of a bakery over a considerable distance to a machine where it was sliced and wrapped, affording opportunity for the bread while traveling this path to be cooled to a proper temperature for wrapping.

By a Pretrial Order the issue of infringment was eliminated by defendant's

admission that there was infringement, provided the patent was valid.

Also, in this Pretrial Order dated March 30, 1960, it appears the invalidity of plaintiff's patent is based upon "prior public use of the subject matter of the patent by third persons, to-wit, Interstate Bakeries at Cincinnati, Ohio, and Kansas City, Missouri; Burny Bros. Bakeries, Chicago, Illinois; Schmidt Baking Company of Baltimore, Maryland." Defendant also contends invalidity "by reason of prior public solicitation of orders by Union Steel Products Company for cooling and conveying systems such as would anticipate the alleged invention of the patent in suit." Such solicitation is allegedly a prior public use.

Defendant further contended that the subject matter of the patent was not inventive over the prior art pleaded in the answer. The Pretrial Order recites the following:

> "The defendant contends that the patent in suit is invalid by reason of the alleged prior use of the subject matter patented by the patentee more than one year prior to the effective filing date of the application * * *. In regard to the said prior use by the plaintiff, plaintiff contends that said alleged prior use was experimental, whereas defendant contends that such was an accomplished public use."

This question, as to whether use by defendant was experimental or not, was the issue about which was raged the bitterest controversy in the case. It is apparent that defendant relies primarily upon this prior use by defendant itself, but with almost equal insistence relies upon other prior uses. Lack of invention in plaintiff's patent is urged, but a decision on that question will not be necessary if any of the other defenses are sustained.

This Court is ruling that the prior use by defendant was not an experimental use because of facts hereinafter stated, and also is sustaining defendant's contention as to other alleged prior uses. Defendant's attack on the patent as having been anticipated by prior arts will therefore not have to be adjudicated. In passing, however, it may be said that in view of many recent rulings by the Fifth Circuit Court of Appeals, holding a number of patents invalid as lacking invention, there is considerable doubt as to the validity of the patent now under discussion.

Findings of Fact

(1) This Court has jurisdiction over the parties and subject matter of the suit.

(2) Patent No. 2,758,391 applied for September 16, 1955 and issued August 14, 1956, to W. E. Lanham, plaintiff herein, covers a device which consists of a system of spirally arranged conveyors with wire grid-link belting used to convey baked goods from the oven to a slicing and wrapping machine, the period of time for such conveyance designed to be sufficient to permit such goods to cool to a desired temperature by circulation of air at room temperature in the bakery.

(3) It is conceded by all parties that all structural parts of the conveyor, such as the conveyor belting, the structure supporting the same, and the motors propelling the same, are old. The alleged novelty in the invention consists only of the combination of the aforesaid elements and the use to which the combination device is put.

(4) It is true that the inventor subsequent to issuance of his patent, or application for the same, has made several slight improvements in the same, not included in any of his claims and including a device to eliminate the jamming of the lower side of the conveyor belts against the sprockets and wheels by which the belt is propelled. There are other minor adjustments, such as guide strips along the sides of the conveyor belts, and perhaps some slight changes in the size of the rods constituting the grid-link conveyor belts, but these differences are legally immaterial.

(5) *Prior Use By Defendant.*

(a) As the Lanham patent application was filed June 11, 1952 it is necessary to determine whether the alleged

prior use by defendant company was sufficiently had prior to June 11, 1951, and to determine whether as contended by plaintiff, such prior use was an experimental use. Without any attempt to review all of the evidence on this point a brief summary will be given.

(b) Prior to 1950 W. E. Lanham, the inventor, had been an employee of defendant company, having been chief engineer. He subsequently went into business for himself, operating a machine shop. He was approached by defendant company with which he made a contract to install for the latter in its Atlanta plant, a system such as described in his patent. The purchase price was agreed to be $17,000, Lanham testifying that it was really worth about twice that sum. The system was installed, plaintiff contending that it was not completed until sometime in the year 1952, defendants contending that it was completed many months prior to June 11, 1951. This is a vital issue of fact in the case. The Court finds the device completed in the year 1950, based in part upon the following evidence:

Plaintiff Lanham testified it was in a way completed in 1950, but there were still difficulties and it was not put in final shape until the early part of 1952. To substantiate his claim there is introduced plaintiff's Exhibit "G", a ledger sheet of Lanham's company relating to this job, at the right hand top corner of the same there being the word "experimental." It represents items beginning January 9, 1952, extending through March 22, 1952, each of these items pertaining only to the aforesaid safety device to prevent jamming of the belt. The invoice contains the words "place trip on conveyor." Mr. Lanham does not produce a single invoice showing any expenditure after June 11, 1951 for a necessary and integral part of the device as covered by his patent, and does not give convincing explanation as to what became of his invoices.

On the other hand, there is evidence in behalf of defendant that the device was substantially completed in the spring of 1950. On May 31, 1950 Lanham's company submitted an invoice to Columbia Baking Company for one bread cooling conveyor, drawing No. 12,749, $16,547, bearing a notation of a credit March 24, 1950, $6,000, and April 24, 1950, $8,500, leaving a balance of $8,047. See defendant's Exhibit No. 1. This appears upon its face to be a final billing.

Evidence from an employee of defendant company at that time indicates that the company had previously been using a box or cabinet type of cooler by which the goods were conveyed from the oven to the wrapping machine. There is testimony to the effect that these old boxes were shipped by defendant company to an Ohio office in the fall of 1950, and the Lanham device completely relied upon from that time in defendant's plant.

(c) The Court finds that the Lanham device installed as aforesaid cannot be said to have been in experimental use. The only way in which it could be said to be experimental is that, it being the first of these systems made and installed by Lanham, he naturally was anxious to observe the same in its operations, and to cure any and all defects that might appear. Therefore, from the fall of 1950 until recent dates certain small defects have appeared in the system, which have been corrected. That fact, however, does not change the fundamental use of the system ever since defendant company disposed of its cabinet type conveyors and relied upon the Lanham system. The primary purpose of defendant company in making the contract with Lanham was to obtain a new and better system of conveying bread from its ovens. It paid Lanham a substantial sum of money to install the same and of course was interested in having any improvements which Lanham might subsequently make. It is quite natural that an inventor having made his first device upon which he later applies for a patent, would be interested in making all the improvements possible.

(d) From the foregoing the Court finds that there was a use by defendant of the Lanham device prior to June 11, 1951, and that such use was not an experimental use in contemplation of law.

(6) *Other Prior Uses.*

■ The Court also finds prior use of the Lanham system more than one year prior to June 11, 1951. Without going into unnecessary details the following evidence in the record is referred to:

A wendway conveyor for Ward Baking Company designed by Union Steel Products Company March 24, 1948, defendant's Exhibit 3–A. Also, for Hardy Baking Company, January 24, 1949, see defendant's Exhibit 4–A. For Freihaufer Baking Company, December 9, 1949, defendant's Exhibit 5–A. For Schmidt Baking Company, February 16, 1949, defendant's Exhibit 6–A, and defendant's Exhibit 7–A. For Royal Baking Company, Oklahoma City, Oklahoma, March 28, 1949, defendant's Exhibit 8–A (note that the rate of travel per minute is given together with total distance traveled). For Schotts Bakery, March 29, 1949, defendant's Exhibit 9–A (delivers 4500 loaves per hour). For Burns Bros. Bakery, revised May 5, 1950, defendant's Exhibit 10–A (see publication of Bakers Weekly in File 10 of March 19, 1951 and advertisements by Union Steel Products Company as defendant's Exhibits 10–E and 10–F). The photograph identified as defendant's Exhibit 10–C shows the Lanham system practically duplicated and used for buns and not rolls, except that the buns are taken manually from the oven and put on the incline conveyor, whereas this is done mechanically by the Lanham system. It is not a Lanham invention, however.

Union Steel Products Company shipped to Purity Bakeries Corporation, Nashville, Tennessee, on May 11, 1950, a conveyor system. See file identified as defendant's Exhibit 11. The photograph therein contained (defendant's Exhibit 11–A) clearly shows the way in which the bread passes from one conveyor belt to another upon axes turned by electric motors. Plaintiff Mr. Lanham in his similar device lays stress upon the fact that this prevents the traverse rods making marks or creases in the bread. That feature, however, is shown by this exhibit not to be new in the Lanham patent.

Union Steel Products Company delivered to Harvest Baking Company on July 19, 1958, their wendway conveyor system. See File, defendant's Exhibit 12, and photograph therein, defendant's Exhibit 12–A, showing the curve in the conveyor belt transporting loaves of bread as in the Lanham patent.

On January 4, 1949 Union Steel submitted to American Baking Company blueprint of its wendway conveyor system (defendant's Exhibit 13), a spiral conveyor system for cooling bread, the rate of travel and the distance of travel being given. This would seem to negative the Lanham claim that such a belt conveyor system had not prior to his invention been used for cooling bread.

The Court does not deem it necessary to refer to each and every instance wherein prior to June 11, 1951 the Lanham system for conveying and cooling bread and other baked products was used.

A careful comparison of all the aforesaid uses with claims 1, 2 and 3 of the Lanham patent will show that there are no items of novelty in said claims which had not been in use prior to June 11, 1951, and many of them for several years prior thereto.

The Lanham claims read as follows:

"1. In a system for handling baked loaves of bread and like products to cool them from oven temperature to a lower temperature at which they can be wrapped, a conveyor for moving the products at a controlled speed while maintaining the products right side up and permitting them to shift position slightly on the conveyor and permitting atmospheric air to circulate freely around them, said conveyor including a first section of a grid-link belt extending along a straight path and having small diameter rods spaced generally parallel to each other and lying transverse to said path, said first section being formed as a continuous loop along a top run and a bottom run, said top run being adapted to support and to

convey the products as they rest upon it, means including sprocket wheels and a drive motor for moving the links of the belt in said first section at a controlled speed and to maintain said belt taut, a second section of a grid-link belt extending along a curved path and having small diameter rods spaced closer at one end than at the other and lying generally transverse to said curved path, said second section being formed as a continuous loop along a top run and a bottom run, said top run being adapted to support and to convey the products as they rest upon it along said curved path and being positioned adjacent the end of the top run of said first section so that the products can move from one top run to the next, and means including sprocket wheels for moving the links of the belt in said second section and for keeping said belt taut.

"2. The combination of elements as in claim 1 in which the links of said belt are inelastically connected together at their ends so that said belt once made taut will remain taut and will not sag, and in further combination with a plurality of additional conveyor sections having top and bottom runs and serially positioned relative to each other, said first and second sections and said additional sections being arranged in a bakery to convey the products from an upper level to a lower level whereby the hotter products will be above the cooler ones.

"3. The combination of elements as in claim 2 in which said sections are arranged in a spiral beginning near the ceiling of a room and leading downwardly toward the floor and in which the products are moved at a speed which aids the passage of gases from them."

### Conclusions of Law

(1) This Court has jurisdiction of the parties and subject matter of the action, same being based upon alleged patent infringements.

(2) Plaintiff contends that he has invented a "new and useful process" contemplated by 35 U.S.C.A. § 101. The process or system is a combination patent using nothing but old elements. Whether there is Invention (35 U.S.C.A. § 101, part IV) or Novelty (part V) need not be here decided, as other defenses urged and hereinafter discussed are being sustained by the Court.

(3) It is contended by defendant that plaintiff's patent is invalid for the reason that the alleged invention was "described in a printed publication in this or a foreign country", and was "in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States" pursuant to 35 U.S.C.A. § 102(b). In reply plaintiff contends that even though such prior use was shown that the use was an experimental use which would not invalidate his patent.

■■ Plaintiff relies upon principles announced in the case of Elizabeth vs. Nicholson Pavement Company, 97 U.S. p. 126, 24 L.Ed. 1000, and other cases following the same. It was there held (see headnote 3):

"The use of an invention by the inventor, or by persons under his direction, if made in good faith, solely in order to test its qualities, remedy its defects, and bring it to perfection, is not, although others thereby derive a knowledge of it, a public use of it, within the meaning of the patent law, and does not preclude him from obtaining letters-patent therefor."

Where such a use is established the burden is on the inventor "to show by convincing proof that the use was not a public use, in the sense of the statute but that it was for the purpose of perfecting an incomplete invention by test and experiments." However, if the use is mainly for the purpose of trade and profit, and the experimenting is merely incidental only, it comes within the pro-

hibition of the statute. See Smith & Griggs Manufacturing Company vs. Sprague, 123 U.S. 249, 8 S.Ct. 122, 31 L.Ed. 141. The reasons underlying the foregoing principles are thoroughly discussed by Judge Learned Hand in the case of Metallizing Engineering Co., Inc. vs. Kenyon Bearing & Auto Parts Co., Inc., et al., 153 F.2d 516 (2 C.). It is there pointed out the inventor can not even publicly exploit the invention for his own use, while at the same time violating the principle "that it is part of the consideration for a patent that the public shall as soon as possible begin to enjoy the disclosure" (153 F.2d 516, p. 520, supra).

In the case of Hobbs v. Wisconsin Power & Light Company, 8 Cir., 250 F.2d 100, p. 108, the court said:

"A use for experimental purposes is not a public use 'if it is conducted in good faith for the purpose of testing the qualities of the invention and for no other purpose not naturally incident to that.'"

In that case it was pointed out that the testimony of the inventor alone supported his contention that the use was by oral agreement an experimental use.

Discussing the question as to whether the inventor intended to abandon the invention the case of Elizabeth v. Nicholson Pavement Company, supra, was cited, indicating the inventor intended to apply for a patent "when he was satisfied that no further improvements were necessary" (250 F.2d 108).

There is nothing in the instant record to indicate that Lanham at the time he manufactured the device in question for Southern Bakeries intended to apply for a patent. He practically completed this device in the spring of 1950 and did not apply for a patent until June, 1952. The record does not even indicate when he first consulted a patent attorney.

The experimental nature of use may also be considered by the period of time employed. As said by the court in

A. Schrader's Sons, Inc. v. Wein Sales Corporation, D.C., 9 F.2d 306, 308:

"To suppose that during the first four or five weeks such a device had finally demonstrated its sufficiency seems to us inherently unlikely."

In the instant case, as pointed out above, the device in question was delivered over to the defendant as purchaser, in the spring of 1950 and the patent was not applied for until June, 1952. In the meantime the plaintiff as inventor was assisting the defendant as purchaser, to iron out any slight defects and to make such improvements as he could. This period of time, however, is an additional circumstance to negative the experimental nature of the device, or use.

In the case of General Electric Company v. Minneapolis-Honeywell Regulator Company, 118 F.2d 278, 279 (2 C.), the use was held to be experimental. There the inventor made the device in his own home and made another for a friend who used that in his home. The Court, stating that

"whether the uses were public or experimental was a question of fact,"

upheld the ruling of the trial judge that the use was experimental.

In conclusion it should be pointed out that Lanham, a former employee of defendant company, at the time in question was running a machine shop; at the request of defendant he manufactured the combination device in question for a consideration exceeding $16,000.-00; he delivered the device to defendant approximately two years before he applied for a patent. The device was in open use to the public. Union Steel Company at the same time was making similar devices for various other bakeries. Plaintiff, while giving as his conclusion that such use was experimental, does not testify that he had any intention to obtain a patent, nor that he had consulted a patent attorney. Under the circumstances this Court feels compelled to rule that the use by defendant company of the

device was an ordinary commercial use and not an experimental use, under the authorities above cited.

(4) The other uses of plaintiff's device, at a time exceeding one year prior to the application for patent, also served to invalidate the patent.

(5) This Court does not find circumstances sufficient for the award of attorneys' fees as prayed for by the plaintiff. Plaintiff waived any claim for injunction against defendant and apparently is seeking to adjudicate the validity of his patent. While to this Court the evidence seems overwhelming that the patent is invalid, the Court can not say the imposition of attorneys' fees is required.

(6) A judgment will be entered dismissing the case.

### Judgment.

Based upon Findings of Fact and Conclusions of Law it is ordered that the above stated case be and the same is hereby dismissed with costs against the plaintiff.