**C. H. TROWLER, doing business as Standard Maps, Appellant,**

v.

**M. Penn PHILLIPS and M. Penn Phillips, doing business as M. Penn Phillips, Associates;**

**Western Woods of Hesperia, a limited partnership;**

**William Harwick, John Kagan and Bert B. Brant, doing business as Harwick, Kagan & Brant;**

**Fred W. Austin, William R. Blumfield and Harold W. Diede, Copartners, doing business as Industrial Lithographers, Appellees.**

**No. 15923.**

United States Court of Appeals
Ninth Circuit.

Sept. 29, 1958.

———◆———

Melville B. Nimmer, Beverly Hills, Cal., for appellant.

Porter C. Blackburn, Burbank, Cal., George R. Maury, Los Angeles, Cal., Kaplan, Livingston, Goodwin & Berkowitz, Frank Mankiewicz, Beverly Hills, Cal., for appellees.

Before POPE, CHAMBERS and BARNES, Circuit Judges.

PER CURIAM.

Trowler is a map maker. He has received certificates of copyright under the copyright laws of the United States for maps entitled "Hesperia" (a local area being rapidly developed in San Bernardino County, California) and "Antelope Valley, Portion of Kern County-San Bernardino County."[1]

In the district court four separate complaints were filed by Trowler against different groups of defendants who have printed, published or circulated maps without his leave. The maps are substantially similar to his maps.[2] How similar, we do not decide. His complaint No. 179 alleges infringement of his Antelope Valley map by Fred W. Austin and others doing business as Industrial Lithographers. Action No. 211 was brought against a limited partnership known as Western Woods of Hesperia. (It has one general and ten limited partners.) Action No. 219 was against the partnership of Harwick, Kagan and Brant and No. 211 was against "M. Penn Phillips, and M. Penn Phillips, doing business as M. Penn Phillips Associates" (sic). In Nos. 211, 219 and 221 infringement of Trowler's map or maps of Hesperia was claimed. The defendants concerned with the Hesperia maps will be hereinafter referred to as the "Hesperia defendants," all of whom are represented by the same counsel. Different counsel represented the Austin group or "Antelope Valley" defendants.[3]

At a pre-trial conference, it was agreed that the plaintiff should make an affidavit setting forth his method in compiling his maps. Nothing further was accomplished at the pre-trial except that an order was made consolidating the four cases for the purpose of trial.

In due time plaintiff Trowler filed his affidavit setting forth in some detail how he prepared his Hesperia maps. So far as describing how he prepared the map of Antelope Valley he said, "I followed (as to the map of Antelope Valley) substantially the same procedure as that

---

1. It would appear that Trowler made one map of Antelope Valley and one of Hesperia. Later he modified the Hesperia map twice. All four maps were copyrighted.

2. The copyrighted maps and the accused maps appear to have been prepared for sales purposes.

3. In the Austin case, the defendants in their motion for summary judgment, inter alia, set up a judgment obtained in an action by Austin against Trowler in the Glendale (California state) Municipal Court. This was in the nature of a plea in bar. The summary judgment did not rely on this state action which had not been set forth in the answer, but in the motion for judgment.

   The Hesperia defendants of the Western Woods of Hesperia group, in addition to answering, filed two counterclaims against Trowler. These they later dismissed without prejudice upon stipulation.

set forth above with respect to my map of Hesperia."

We believe it fair to say that his account of preparing the Hesperia map lists quite a little work done by him in preparing the map. His source material, he says, included recorded tract sheets of the Hesperia area, many sheets of the San Bernardino County road system, a county map, Department of Interior maps, state highway maps and Santa Fe railroad maps. He tells of problems of tying the maps together, adjustment of scales, elimination of much material from the source. He made some additions of landmarks from personal observation. Further, he says he straightened out many street names.

As soon as the affidavit was filed, motions for summary judgment were made by the Hesperia defendants and the Austin group. In due course these motions were granted on the theory of lack of sufficient originality in Trowler's maps to make them the subject of a valid copyright.

It is interesting to note that findings of fact and conclusions of law were prepared and signed. The theory of a summary judgment is that there are no disputed facts. We have seen findings of fact accompanying summary judgments, Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A.,[4] which, while unnecessary, did provide a handy summary. But all too often a set of unnecessary findings of fact is the telltale flag that points the way to a discovery that summary judgment should not have been granted.

Here we think there were issues of fact not to be resolved by merely briefly describing the method of compilation; that an examination of the source material was needed to see if the end product met the standards of copyrightability. See Hycon Mfg. Co. v. H. Koch & Sons, 9 Cir., 219 F.2d 353, certiorari denied 349 U.S. 953, 75 S.Ct. 881, 99 L.Ed. 1278. As to the Hesperia defendants, Trowler was deprived of a right to trial. Further, the district court should have a pre-trial order delineating the issues of fact and law.

As to the Antelope Valley maps, one could say the same thing or perhaps better say that the short reference in the affidavit that "similar methods were followed" just didn't fit the case at all because too many of the facts alleged with respect to Hesperia were peculiar to Hesperia. So, on Antelope Valley there also should be a trial.

We note an unusual jumbling of the claims of the four actions. As above noted, the actions in the district court were consolidated for trial only. Separate judgments were therefore required and entered. Then appellant gives one notice of appeal for the three Hesperia cases and a second notice of appeal on the Antelope Valley case. Then, without leave, the appeals are all consolidated here as one. On proper application the court almost certainly would have permitted a consolidated record and consolidated briefs. But, as it is, there were appeals from four judgments; thus, four appeals. Perhaps, in the trial court the three Hesperia cases, after remand, could be consolidated for all purposes and consolidated with the Antelope Valley case for trial.

The judgments are reversed for proceedings consistent with the foregoing opinion. In reversing these cases, the court does not intend to intimate that the Trowler maps were or were not properly copyrightable. It thinks full proof would enable a court to better pass judgment. Also, this court has not reached the issue of infringement.

4. Rule 52(a) provides: " * * * Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b)."

This Court is mindful of the fact that local Rule 3(d)(2) of the United States District Court for the Southern District of California provides in part as follows:
"There shall be served and filed with each motion for summary judgment * * * proposed findings of fact and conclusions of law and proposed summary judgment * * *."