**A R INC., Plaintiff-Appellant,**

v.

**ELECTRO–VOICE, INCORPORATED, Defendant-Appellee.**

No. 13822.

United States Court of Appeals
Seventh Circuit.

Dec. 28, 1962.

Marmaduke Hobbs, South Bend, Ind., Arthur D. Thomson, Boston, Mass., Wayne B. Easton, South Bend, Ind., for plaintiff-appellant.

Leonard G. Nierman, Marshall A. Burmeister, Chicago, Ill., Eugene C. Knoblock, South Bend, Ind., Stone, Nierman, Burmeister & Zummer, Chicago, Ill., Oltsch & Knoblock, South Bend, Ind., for defendant-appellee.

Before DUFFY, KNOCH and CASTLE, Circuit Judges.

CASTLE, Circuit Judge.

A R Inc., plaintiff-appellant, owner of Villchur Patent No. 2,775,309, relating to sound translating devices, brought suit in the District Court charging Electro-Voice, Incorporated, defendant-appellee, with infringement of the patent. The defendant's answer and counterclaim denied infringement, asserted invalidity of the patent for lack of novelty and invention over the prior art, sought a declaratory judgment that all claims of the patent are invalid, and that plaintiff be enjoined from asserting the patent against defendant's customers.

In response to interrogatories, plaintiff limited its claim of infringement to

claims 1, 2, 4, 7 and 8 of the patent in suit. The cause was heard on defendant's motion for summary judgment for dismissal of the complaint and the granting of its counterclaim. The motion for summary judgment was based on the pleadings, the answers to the interrogatories, a deposition and affidavit of plaintiff's president, who was the applicant for the patent in suit, and prior art set forth in a notice filed by defendant pursuant to 35 U.S.C.A. § 282. The District Court held that the patent in suit is invalid[1] for lack of novelty and invention over Olson Patent No. 2,490,466 and granted defendant's motion for summary judgment. The plaintiff appealed.

The plaintiff's basic contentions on appeal are, in substance, that (1) the existence of genuine material factual issues, or of conflicting inferences which can be drawn from the evidentiary facts, precluded the District Court's disposition of the matter on motion for summary judgment and required resolution of such issues or conflicting inferences on the basis of expert testimony respecting the meaning or interpretation of the specifications and claims of the two patents; (2) the court erred in not giving effect to the statutory presumption of validity to which the Villchur patent is entitled; (3) the court erred in adjudging all 10 claims of the Villchur patent to be invalid without making specific findings or rulings as to the patentability of 5 of the claims; and (4) the court was clearly wrong in its finding and conclusion that Claim 7 of the Villchur patent described no patentable invention over the Olson disclosures.

The record discloses that both Villchur Patent No. 2,775,309 and Olson Patent No. 2,490,466 relate to improvements in loudspeakers of the type customarily used in association with radio receivers, rec-

ord players and the like. Both are in the same class and subclass. Both have the same general objectives. Both patents disclose the use of a diaphragm or cone, an associated movable voice coil, and a fixed magnetic mechanism, all of which are standard elements well known in the prior art and are used to perform their customary functions. The common purpose of both patents is to improve the performance characteristics of a loudspeaker system[2] by decreasing nonlinear sound distortion and extending satisfactory reproduction at lower frequencies, without objectionable attenuation or fading of the sound. For this purpose each effects a reduction in the natural resonant frequency of a speaker unit[3] in free air by increasing the compliance (or, conversely, decreasing the stiffness) of the mechanical suspension means which flexibly supports the diaphragm.

According to the claims and specifications of the Villchur patent the results he sought, which included a reduction in the size or required cubic volume of a cabinet speaker system, are then achieved by mounting the highly compliant speaker unit in an enclosed cabinet in which the elastic stiffness of the confined air or fluid medium is used to provide a restoring force for the diaphragm which raises the resonant frequency of the combined unit or speaker system according to the relative proportions of the mechanical restoring force of elastic supporting means used to suspend the diaphragm and support the voice coil and the restoring force of the air or fluid medium confined in the enclosed cabinet. Thus, claims 1 and 7 of the Villchur patent each call for an elastic supporting means or compliant suspension of the diaphragm and voice coil to which the restoring force of an elastic fluid medium in an essentially

1. The infringement issue was not reached and is not before the Court in this appeal.

2. The assembly commonly known in the industry as a "speaker system" includes the cabinet in which the sound producing mechanisms are mounted.

3. The diaphragm, voice coil and magnet assembly (with the suspension and support means for the diaphragm and coil) is referred to herein as a speaker unit.

fluid-tight or gas-tight enclosure is added. The claims recite and employ formulae and equations but Villchur's deposition establishes that these are standard formulae and equations, and that the concluding formula of each claim is a resonant frequency equation true for any enclosure.

The Villchur patent recognizes that the use of relatively small totally enclosed cabinets is not new in the art but states that such design had been at the expense of raising the resonant frequency of the loudspeaker system well above its optimum value and of introducing bass attenuation below the new resonant frequency. It further states that its enclosure differs functionally from the conventional totally enclosed loudspeaker cabinet in that in Villchur the acoustical stiffness of the enclosed air is regulated and used as an integral and necessary characteristic of the loudspeaker system, while in the conventional totally enclosed loudspeaker cabinet the acoustical stiffness of the enclosed air is a necessary evil, and reduced to values as small as possible in order to avoid raising the resonant frequency of the moving system.

In addition, prior art (Olson Patent No. 2,688,373) had disclosed that "[a]s the cabinet volume is decreased, the low frequency cut-off in acoustical power output is increased in frequency. * * * [T]he smaller the cabinet cavity the higher the resonant frequency of the loudspeaker".

In the affidavit of Villchur, filed in the cause, he states that "[t]he sealed cabinet, in *combination* with a diaphragm having a highly compliant support, is the key to the invention described and claimed in the Villchur patent" and points out "the Villchur patent contemplates that the lessened mechanical restoring force afforded by the lowered mechanical stiffness of the highly compliant diaphragm suspension is substituted, quantitatively, by the acoustic restoring force of the predetermined volume of air enclosed within the cabinet".

Plaintiff concedes that. Olson Patent No. 2,490,466, in its particular embodiment illustrated in Figure 25 thereof, discloses a sound translating device or speaker system comprising the combination of a totally enclosed cabinet and a speaker unit, having a movable diaphragm and voice coil capable of executing excursions in a magnetic field, mounted in the cabinet or enclosure; compliant means suspending the diaphragm and voice coil in the magnetic field; the speaker unit having a natural or resonant frequency in free air which is at least an octave below the natural frequency of the speaker system (including the cabinet); the cabinet enclosure constituting means for raising the speaker unit frequency to the resonant frequency of the system, and for exerting an elastic restoring force on the diaphragm—substantially as set forth in claim 7 of the Villchur patent. But plaintiff contends the Villchur claims distinguish the Olson disclosures by reason of the element or functional relationship set forth in Villchur, particularly as represented in the closing clause of claim 7 of Villchur, which states:

"the cubic volume of said enclosure being that value which will raise the natural frequency of said transducer [speaker unit] to said operating value in accordance with the relationship. * * * "

defined by a standard formula or equation which admittedly applies to all speaker systems. In this connection plaintiff points to the specifications of Villchur which state "the volume of said enclosure so regulated and co-ordinated with the characteristics of the electromechanical transducing mechanism [speaker unit] that the total stiffness and restoring force of the moving system is neither higher than nor lower than optimum". Plaintiff argues that it can thus be inferred that Villchur was primarily concerned with the problem of designedly utilizing the restoring force of the air in the enclosure to improve the linearity of the force displacement relationship of the speaker unit, and raise the quality of performance to optimum, by the correlated relationship of that large acoustic restoring force

and the relatively small elastic restoring force of the mechanical suspension and that Villchur had turned the liability of a small cabinet enclosure into an asset by teaching the art how a small cabinet or enclosure could cooperate with a highly complaint speaker unit mounted therein, to produce very superior results at a desired optimum resonant frequency, according to the conditions under which the speaker system would be used. Plaintiff states that it can be inferred from Olson that the latter was concerned only with the problem of increasing the mechanical compliance of the speaker unit for use in any type of mounting and in effecting a space-saving design of such unit, and that Olson merely reduced the liability of a small cabinet enclosure by providing a more satisfactory low-frequency response through use of his compliant mechanical suspension. Plaintiff contends the possibility of these inferences produce genuine material factual issues which precluded disposition of the matter by motion for summary judgment. But the differences engendered by such possible inferences [4] do not reach or involve any factual consideration material to a determination of what Olson actually *disclosed* and the nature of any improvement thereon stated and measured by the Villchur claims read in the light of the specifications.

The issue presented by the defendant's motion for summary judgment, and resolved favorably to the defendant by the District Court, is whether the plaintiff's patent is valid over the prior art. It concerns, as above indicated, the showing made by the prior art before Villchur produced his alleged invention, the nature of the improvement the patentee has made over the prior art, and the final step of resolving whether the difference over the prior art disclosures is properly classifiable as "invention". Armour & Co. v. Wilson & Co., Inc., 7 Cir., 274 F.2d 143, 156. The prior art relied upon here is documentary in form. It did not stand mute but spoke for itself. Armour & Co. v. Wilson & Co., supra. And, we do not find anything in the deposition testimony of Villchur or his affidavit, accepting it as we do as the testimony of a qualified expert in the field, which precipitates a genuine factual issue material to the resolution of the ultimate issue presented by defendant's motion. The situation here is analogous to that presented in Davison Chemical Corp. v. Joliet Chemicals, Inc., 7 Cir., 179 F.2d 793, in which this court recognized that a suit concerning the validity of a patent over the prior art is not immune from disposition on motion for summary judgment even though, in addition to prior art patents, deposition testimony of the applicant and affidavits are involved, if no genuine issue of material fact is present. And see: Magee v. Coca-Cola Company, 7 Cir., 232 F.2d 596.

Without attempting to detail all of the disclosures made by Olson we do point out that it is evident that claims 9 and 10 of that patent disclose and teach that the confined air of a substantially enclosed and relatively small cabinet, within which is mounted a highly compliant speaker unit, having a natural resonance in free air below the useful range of frequencies to be reproduced, can be used as a restoring force to raise the resultant resonance to a point still desirably low in the useful range of frequencies to be reproduced—and with the purpose of improving the performance characteristics of the loudspeaker system by decreasing non-linear sound distortion and extending satisfactory reproduction at lower frequencies, without objectionable attenuation or fading of sound. And it was known in the prior art that as cabinet

---

4. Plaintiff asserts the possibility of additional inferences which it claims serve to raise factual issues but from a careful study of the record we are of the opinion that none raise a fact issue material to a determination of what the prior art disclosed and the nature of the improvement stated and measured by the claims of the Villchur patent.

volume is decreased the resonant frequency of a speaker system is raised.

In view of these prior art disclosures, and the concession made by plaintiff with respect to the Olson embodiment illustrated by its Figure 25, to which reference has already been made, it is apparent that plaintiff can distinguish Villchur over this prior art only if, as it contends, the closing clause of claim 7 of Villchur defines an element or functional relationship which imparts novelty and invention to the patent. That clause, hereinbefore quoted, states in substance that the resonant frequency of the transducer (speaker unit) is raised to "said operating value" by a cubic volume value of the enclosure determined in accordance with a standard equation for resonance. In the claim the term "said operating value" has as its antecedent "an operating value corresponding to said natural frequency of said translating device [speaker system]" and "said natural frequency" in turn refers to the "lower end of the range of the frequencies to be produced uniformly" by the speaker system. The clause therefore merely makes a functional statement which is descriptive of the effect and operation of the equation in determining the resonant frequency of the speaker system—the manner of determining the cubic volume requisite to the resultant resonant frequency desired in the speaker system. In the light of the prior art the regulation and coordination of the cabinet volume with the resonant characteristics of the speaker unit according to a standard equation known to the art in order to achieve desired "optimum" performance characteristics in the speaker system do not constitute patentable invention. So optimizing the functional relationship of the sealed cabinet with a speaker unit diaphragm having a highly compliant support—where the functional relationship of such cabinet-speaker unit combination, although asserted to be the key to the invention, was disclosed by the prior art, does not in our opinion constitute such an addition to the sum of useful knowledge as serves to characterize patentable

invention. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152, 71 S.Ct. 127, 95 L.Ed. 162. The quality of invention is lacking. The prior art having taught generally the functional relationship described it does not rise to the dignity of invention to teach optimization of the functions by making quantitative adjustments to achieve the most desirable or effective result, there being involved in such process no discovery but only the exercise of prudence and skill. De Lamar v. De Lamar Mining Co., Ltd., 9 Cir., 117 F. 240, 248–249. Moreover, Villchur, in his deposition admits that the term "optimum resonant frequency" which appears in the specifications expresses a definite value only in the sense of referring to the measure of distortion acceptable in connection with the use or purpose for which the speaker system is designed and intended or "what power capabilities you want to achieve". Such criteria does not meet the definiteness required of a valid claim. General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402.

■ The acclaim with which plaintiff's speaker system was met and the commercial success it enjoys attest and pay tribute to the excellence of the product. They also affirm that desirable and efficient results were achieved through the discriminating choice and artful skill of patentee Villchur in his adaptation and employment of existing elements and known principles in the acoustic-electronic field. But neither acclaim nor commercial success can supply the quality of "invention" requisite to patentability. H. W. Gossard Co. v. J. C. Penney Company, 7 Cir., 304 F.2d 515, 517–518; Hobbs v. Wisconsin Power & Light Company, 7 Cir., 250 F.2d 100.

■ Likewise, the statutory presumption of validity attaching to the issuance of a patent is of no aid to the plaintiff. Olson Patent No. 2,490,466 was not before the Patent Office, and there is no presumption that a patent is valid as embodying an invention over pertinent pri-

or art not cited or considered by the Patent Office. Hobbs v. Wisconsin Power & Light Company, supra. In Elgen Manufacturing Corporation v. Grant Wilson Incorporated, 7 Cir., 285 F.2d 476, relied upon by plaintiff, none of the prior art patents not before the Patent Office met the invention singly nor was there any suggestion how anyone skilled in the art could have combined any two or more of the references to obtain the result disclosed by the patent in suit. That situation does not obtain here. The Olson patent in and of itself disclosed both the combination and the functional relationship of Villchur. There can be no presumption that the examiner reviewed and discarded it. It is more likely that he missed it.

The District Court's order is cast in a form which includes a memorandum opinion and sets forth the reasons for the court's holding that the Villchur patent lacks novelty and invention over the Olson patent. Specific findings of fact and separate conclusions of law are not made and set forth as is required where Rule 52(a) of the Federal Rules of Civil Procedure (28 U.S.C.A.) applies. But Rule 52(a) expressly exempts decisions on motions for summary judgment from its provisions. Such specific findings and separate conclusions were not required to be stated. Where, as here, no genuine material factual issue is presented it would be ill-advised to make specific findings and separate conclusions. They would carry an unwarranted implication that a fact question was presented. Cf. Trowler v. Phillips, 9 Cir., 260 F.2d 924. There is therefore no merit to plaintiff's contention that the court erred in not making such specific findings or rulings on each of the 5 claims of the Villchur patent the memorandum opinion did not discuss. There is nothing in these remaining 5 claims which would distinguish them over Olson. The counterclaim put all 10 claims of the patent in issue and it is clear from the order and the injunctive relief granted against assertion of the patent that all of its claims were adjudged invalid.

We conclude that the District Court did not err in its grant of summary judgment favorable to the defendant, and its judgment order is affirmed.

Affirmed.